In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2018

KURT STUHLMACHER and KELLY STUHLMACHER,

*Plaintiffs-Appellants*,

*v.*

HOME DEPOT U.S.A., INCORPORATED and TRICAM INDUSTRIES,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:10-cv-00467 — **Andrew P. Rodovich**, *Magistrate Judge*.

ARGUED NOVEMBER 4, 2014 — DECIDED DECEMBER 17, 2014

Before MANION, WILLIAMS, and SYKES, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Kurt Stuhlmacher's parents purchased a ladder from Home Depot so that their son could work on the roof of a cabin he was building for them. Kurt was using the ladder for the first time when it fell, causing him to fall. Kurt and his wife brought a personal injury action against Home Depot and the ladder's manufacturer, Tricam Industries. At trial, the Stuhlmachers' expert, Dr. Thomas Conry, testified that the ladder was defective, likely

causing Kurt to sense instability and involuntarily shift his weight. The magistrate judge struck Dr. Conry's testimony, finding that Dr. Conry's explanation of how the accident occurred did not "square" with Kurt's testimony that the ladder shot out to his left.

Because the testimony was stricken, the Stuhlmachers did not have any evidence showing causation, so the judge entered judgment as a matter of law for the defendants. We hold that the magistrate judge abused his discretion in striking Dr. Conry's testimony. We reverse the judgment of the district court and remand the case for a new trial.

## I. BACKGROUND

On November 1, 2008, Kurt Stuhlmacher, a millwright technician, was building a cabin for his parents in Sullivan, Indiana. Three days earlier, his parents had purchased a four-legged fiberglass step ladder from Home Depot in order for Kurt to work on the roof. Kurt, using the ladder for the first time, had just begun to put together the rafters when the ladder fell. He grabbed onto a rafter for a moment and then fell on the right front rail of the ladder, striking his groin. As a result of the fall, Kurt injured his shoulder. The more significant injury, however, was to his penis. Doctors later diagnosed Kurt with Peyronie's disease, which causes extreme pain during erection and prevents him from having sexual intercourse.

Several hours after the fall, Kurt looked at the ladder and saw that it had come apart on the right rear side. The right rear spreader bracket rivets were pulled through the right rear rail. The ladder had been squeezed together and some of the diagonal step braces were bent. Kurt and his wife

Kelly brought this product liability action against Home Depot and Tricam Industries. The complaint alleged that the rivets holding the support arm on one side of the ladder failed and caused the ladder to collapse.

The Stuhlmachers retained Dr. Conry, an accident reconstructionist with a doctorate in mechanical engineering, to support their claim that the subject ladder was defective and that the defect caused Kurt's fall. Dr. Conry prepared an accident report and was deposed by the defendants. Before trial, the defendants filed a motion in limine to exclude Dr. Conry's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which was denied. Also, in partially denying the defendants' motion for summary judgment, the magistrate judge found that Dr. Conry provided sufficient support for his theories and ruled that the plaintiffs could present evidence that the ladder was both defective and dangerous because the defect caused cracking and the spreader bar to separate.

In April 2014, the case went to trial before a jury. On the second day of trial, Dr. Conry testified that the rivets in Kurt's ladder were different in two ways from the rivets called for in the design drawings. The rivet heads were smaller in diameter and the rivets did not have an annular lip (that is, a lip with a series of concentric circles, allowing for improved holding power). Dr. Conry opined that during the manufacturing process the substituted rivets were over-tightened, and the rivets and bracket connection permanently deformed, weakening both sides of the fiberglass of the right rear rail. This weakened spreader bar connection, with the rivets slicing through the fiberglass rail, dramatically changed the integrity of the ladder. The weakened connec-

tion would have caused Kurt to sense a change in the stiffness of the ladder and involuntarily move his weight to the left, causing the ladder to fall.

After Dr. Conry's direct examination, the judge excused the jury and engaged in the following colloquy:

Court: In your opinion, did what everybody is calling the spreader bar disconnect from the rail while the plaintiff was standing on the ladder?

Dr. Conry: I can't say that for sure. What I can say is that the stiffness of that joint where the rivets are on the rail was weakened substantially so that—you know, that the process of the rivet heads being pried through the material was underway while Mr. Stuhlmacher was on the ladder.

Court: … What, in your opinion, caused the plaintiff to fall off the ladder?

Dr. Conry: My opinion is that he sensed a change in the stiffness of that ladder and he was likely—involuntarily shifted his weight…. I think it was probably some kind of an involuntary motion as a result of sensing the weakness on that side because once—once the crack had propagated and those rivets had started to pry through, that changes the structural integrity of that ladder dramatically.

Court: In your opinion, when did the actual separation of the spreader bar from the rail occur?

Dr. Conry: I cannot say for sure. I know it was underway, but did it—did it happen at the point that he fell off? Did it happen, you know, a fraction of a sec-

ond after that? I can't say. All I can say is that the material had that crack in it and the bracket under the load was prying that rivet through.

The magistrate judge found that Dr. Conry's testimony regarding causation did not match up with Kurt's testimony. The judge said, "[t]he plaintiff never testified that the ladder became unstable, that the ladder in any way shook. His testimony was that all the sudden the ladder went to the left." The judge reasoned that even if the ladder was defective in the way Dr. Conry opined, the plaintiffs had failed to show a causal link between the alleged defect and the accident, since Dr. Conry's testimony could not be reconciled with Kurt's testimony.

At the request of the defendants, the judge struck Dr. Conry's testimony. With that evidence gone, the plaintiffs admitted that they had no evidence to establish proximate cause and the judge entered judgment as a matter of law for the defendants. The Stuhlmachers appeal.

## II. ANALYSIS

The Stuhlmachers argue that the magistrate judge improperly excluded Dr. Conry's testimony and invaded the province of the jury when he found that Kurt's testimony was not reconcilable with Dr. Conry's explanation of causation. This incorrect evidentiary ruling resulted in the judge erroneously entering judgment as a matter of law for the defendants. We review evidentiary decisions, including decisions whether to admit expert testimony, for an abuse of discretion. *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). For expert testimony, we review de novo whether the district court properly applied the *Daubert* framework. *Id.* at

590. If properly applied, then we review the ultimate decision of whether to admit the testimony for abuse of discretion. *Id.* And we review the grant of judgment as a matter of law de novo. *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007). The plaintiffs do not argue that the judge improperly applied the *Daubert* framework, so we limit our analysis to an abuse of discretion review of the ultimate decision to strike Dr. Conry's testimony.

Expert testimony is admissible at trial if the testimony is relevant to a fact in issue, is based on sufficient facts or data, and is the product of reliable scientific or other expert methods that are properly applied. Fed. R. Evid. 702. The Supreme Court in *Daubert* interpreted Rule 702 to require that district courts, prior to admitting expert testimony, determine whether the testimony is reliable and whether it will assist the trier of fact in determining some fact that is at issue. 509 U.S. at 589. That is, the district court serves as a "gatekeeper" whose role is to ensure that an expert's testimony is reliable and relevant. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Here, the magistrate judge found that Dr. Conry's testimony was reliable enough to be heard by the jury. However, after Dr. Conry's direct examination, the judge struck his testimony as irrelevant under *Daubert* because he found that Dr. Conry's version and Kurt's version did not square. In the magistrate judge's view, Dr. Conry testified to one fact pattern of how the accident occurred, and Kurt testified to another fact pattern. We do not agree. Dr. Conry's and Kurt's testimony are easily reconcilable, particularly since the fall happened so quickly.

An expert's testimony qualifies as relevant under Rule 702 so long as it assists the jury in determining any fact at issue in the case. *Smith*, 215 F.3d at 718. Experts are allowed to posit alternate models to explain their conclusions. *Walker*, 208 F.3d at 587. "Where an expert's hypothetical explanation of the possible or probable causes of an event would aid the jury in its deliberations, that testimony satisfies *Daubert*'s relevancy requirement." *Smith*, 215 F.3d at 718–19. The question of whether the expert's theory is correct given the circumstances of a particular case is a factual one left for the jury to determine. *Id.* at 719.

Here, the judge took that question away from the jury. A jury could have found that Dr. Conry's theory of the accident was credible and that Kurt's testimony merely reflected his memory of the event as it was happening. *See Lauzon v. Senco Prods.*, 270 F.3d 681, 695 (8th Cir. 2001) (reversing the district court's exclusion of the expert's testimony because, although the expert's opinion and the plaintiff's account of events were seemingly varied, there was a "sufficient nexus" between the two testimonies and the expert testimony would aid the jury in their final determination). It is understandable that Kurt would not recall exactly what happened. Kurt testified that he was standing on the seventh step of the ladder when "it just, like, fell out–fell this way out from underneath me to the left." He did not see the ladder as it fell, since he grabbed onto the rafter to stop his fall. So he did not know whether the ladder split right before or right after he fell. Furthermore, regardless of when the ladder came apart, the jury would be entitled to find that the manufacturing defect Dr. Conry described caused Kurt's accident if it caused him to lose his balance.

Dr. Conry testified that Kurt likely would have involuntarily moved as a result of sensing a change in the stiffness of the ladder. Kurt's statement that the ladder suddenly moved to the left could have been the sensed stiffness change or instability that Dr. Conry described. The magistrate judge faulted Kurt for not testifying that the ladder felt unstable before its fall, but Kurt also did not testify that he felt unstable or lost his balance. Obviously, for the fall to have occurred, something or someone had to have been unstable. From Dr. Conry's and Kurt's testimony, the jury could choose to infer that the weakened connection between the spreader bar and the rail caused the ladder to become unstable, making Kurt involuntarily move. Dr. Conry's testimony would have assisted the jury in determining what caused the ladder to move.

Kurt's fall happened very quickly. He testified that he did not see or hear anything, but that the ladder suddenly moved to his left. His expert then reconstructed what happened and gave his opinion on how an alleged defect could have caused the accident. It is not the trial judge's job to determine whether the expert's opinion is correct. *Smith*, 215 F.3d at 719. Instead, under the relevancy prong, the judge is limited to determining whether expert testimony is pertinent to an issue in the case. *Id.* Here, the judge improperly expanded his role beyond gatekeeper to trier of fact. *See Lauzon*, 270 F.3d at 694 (holding that under the relevancy prong of *Daubert*, the opinion offered by an expert is admissible where it is "sufficiently related to the facts of the case such that it will aid the jury in resolving the factual dispute"); *see also Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 526 (6th Cir. 2014) (reversing the district court's exclusion of the expert's testimony and stating that a party may prove his case by any

relevant evidence, even though that evidence may contradict the testimony of a witness previously called by him).

For these reasons, we conclude that the magistrate judge's decision striking Dr. Conry's testimony cannot stand.

### III. CONCLUSION

The judgment of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.