# Illinois Official Reports

## Appellate Court

*Berke v. Manilow*, 2016 IL App (1st) 150397

| | |
|---|---|
| Appellate Court Caption | RAYMOND BERKE and CAROL BERKE, Plaintiffs-Appellants, v. LEWIS MANILOW, J. GRAHAM DOBBIE, GUSTAVO A. BERMUNDEZ, and MICHAEL KEISER, as Trustees Under Trust Agreement Dated July 1, 1922, and Recorded as Document No. 8181780 and Known as Trust No. 2450 Lakeview Avenue Trust, and WOLIN LEVIN, INC., Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-15-0397 |
| Filed<br>Rehearing denied | August 23, 2016<br>October 19, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-12449; the Hon. Eileen M. Brewer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Todd A. Smith, Brian LaCien, and Lauren Elliott, all of Powers Rogers & Smith, P.C., of Chicago, for appellants.<br><br>Michael Resis, Jamie S. Lane, and Jason T. Mayer, all of SmithAmundsen, LLC, of Chicago, for appellees. |

Panel                JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pierce concurred in the judgment and opinion.
Justice Gordon specially concurred, with opinion.

**OPINION**

¶ 1      Plaintiff Raymond Berke fell in the vestibule of an apartment building where he and his wife were staying with friends. A doorman heard but did not see Raymond fall, and there were no eyewitnesses. Raymond sustained spinal injuries rendering him quadriplegic. He has no memory of the incident.

¶ 2      Raymond brought a premises liability claim against the building owner and the management company, alleging the vestibule area, and the stairs and doorway in particular, were improperly designed and maintained and were the direct and proximate cause of his injuries. Raymond's wife brought loss of consortium claims against both defendants.

¶ 3      Defendants moved for summary judgment, and the trial court entered judgment in their favor. The Berkes argue that they presented sufficient admissible evidence to support their *prima facie* case of premises liability, precluding summary judgment. They also contend that the trial court erred in striking parts of their expert witness affidavits, submitted in support of their response to defendants' summary judgment motion and that the court should have granted their motion to cite supplemental authority.

¶ 4      We affirm. The Berkes presented no evidence other than speculative assertions through expert affidavits that Raymond fell because defendants created and maintained a condition exposing him to an unreasonable risk of injury. Further, the trial court did not abuse its discretion in denying the motion to cite supplemental authority.

¶ 5                          BACKGROUND

¶ 6      In November 2012, Raymond and Carol Berke, who live in California, stayed with friends in a luxury 12-story co-op apartment building. Trust No. 2450 Lakeview Avenue Trust owns the building; Wolin-Levin, Inc., a property management company, manages and maintains it. Toward the back of the building is a west exit from which one can get to the parking garage. The west exit has an exterior building door on top of a threshold with a landing that opened to a stairwell with three steps that led to an exterior door to the outside. The threshold was 7½ inches high on the interior side and 2¼ inches high on the exterior side. The landing was 10½ inches deep. When leaving through the west exit, a person has to walk through the exterior building door, onto or over a 7½-inch threshold, step down 2¼ inches onto the 10½-inch landing, and then up the three stairs out through the exterior door. According to the Berkes, the height and the depth of the threshold and the depth of the landing violated code and industry standards and constituted a tripping hazard. They also assert that the building door violated several building codes and standards because it opened inward and had an automatic closure system that caused it to close too quickly and prevented a person from passing through it safely. The Berkes contend the tripping hazard created by the threshold and door was exacerbated by the lack of any warning signs.

¶ 7        On November 2, Raymond and Carol left the apartment building through the west exit and went to their car, which was in the parking garage. Carol forgot her cell phone in the apartment, and Raymond went back to get it. Dan Cooney, the building's doorman, escorted Raymond to the apartment and back. Cooney said he walked with Raymond toward the west exit but Raymond waved him off, indicating he did not need Cooney to open the door for him. Cooney saw Raymond go through the door and saw the door close behind Raymond. Cooney returned to his desk, located a few feet from the exit. Moments later, Cooney heard a noise he described as a "kunk," went to the west exit, and found Raymond face down on the ground, with his head on the second stair leading out the exit door. Cooney said he did not hear Raymond trip and does not know what caused him to fall.

¶ 8        When Cooney reached Raymond he saw that his eyes were closed and clenching. He thought that Raymond might have been trying to move or get up but was unable to do so. Cooney asked a coworker for help, called 911, and then went out to the parking garage to tell Carol that her husband had an accident. When Carol went back inside she saw Raymond lying on the ground with his head on the first step below the landing and his feet two to five inches from the interior door. She said Raymond was not face down but was leaning toward the right with the right side of his face on the stair. He had abrasions on his chin and nose. Later, additional abrasions were found on Raymond's knees. An ambulance took Raymond to St. Joseph Hospital. It was later determined that Raymond was quadriplegic.

¶ 9        Raymond, who did not regain consciousness until after surgery, has no memory of his fall. When asked what he remembered from that morning, Raymond said "I remember going to the car in the garage. And that's all that I remember. *** I have no recollection after going to the garage the first time. *** And I have no recollection of anything for the next three days." He said he did not know what caused his fall and could not recall anything about the west exit that may have caused him to fall.

¶ 10       The Berkes sued defendants for negligence and loss of consortium. (They also sued St. Joseph Hospital, numerous medical providers, and the City of Chicago; those claims are not a part of this appeal.) The Berkes specifically alleged that defendants were negligent in (1) allowing the premises to remain improperly designed, (2) allowing the premises to remain improperly lit, (3) failing to ensure the premises were free from debris, (4) allowing a hand railing to remain in improper condition, (5) allowing the layout of the premises to "remain contra to applicable safety hazards," (6) allowing the layout of the premises to remain in an unsafe condition, (7) allowing the layout of the premises to remain in disrepair, and (8) failing to maintain the premises. The Berkes further allege that "one or more" of these acts of negligence proximately caused Raymond's injuries.

¶ 11       Defendants filed a motion for summary judgment, arguing that the Berkes have not demonstrated that defendants breached their duty of care and cannot demonstrate that the defendants' conduct was the proximate cause of Raymond's injuries. In response, the Berkes contended defendants had a duty to invitees to maintain the premises in a reasonably safe condition. They also asserted that the west exit's threshold was a tripping hazard and that a reasonable jury could conclude that Raymond tripped and fell as a natural and probable consequence of defendants' negligent failure to inspect and maintain the premises. The Berkes cited to at least four pieces of evidence that make this conclusion reasonable and more probable than any other explanation: (1) the threshold violated building codes and industry standards and was a tripping hazard; (2) the proximity of Raymond's feet to the tripping

hazard; (3) the abrasions to Raymond's face and knees, which are consistent with a forward trip and fall; and (4) the absence of other causes within reasonable contemplation.

¶ 12     The Berkes' response included affidavits from Arnold Siegel, an accident reconstructionist; Gregory Wisniewski, an architect; and Dr. Kenneth Corre, an emergency room physician.

¶ 13     Siegel asserted, based on his inspection of the premises, review of materials produced in discovery, and measurements of the doorway and vestibule, that the western entrance to the building constituted an unwarned tripping hazard, that Raymond encountered that tripping hazard "because he was found on or past the tripping hazard in the direction of egress travel," and that "[t]he natural and probable consequence of an individual encountering a tripping hazard is that he will more likely than not trip and fall." Thus, he concluded that the "unreasonably dangerous condition of the doorway more likely than not caused Raymond Berke to fall and trip forward with motion." Wisniewski similarly opined that "[t]he unreasonably dangerous threshold and unreasonably dangerous door and closure system more likely than not caused Dr. Berke to fall." He further asserted that "[d]efendants were negligent and caused Dr. Berke to trip and fall by failing to perform a competent inspection, detect and remedy the defects present at or around the west entrance of the building." Dr. Corre asserted, based on his review of Raymond's medical records, that no acute or chronic medical condition or illness caused him to collapse, lose his balance, or fall and his abrasions were "most likely the result of a prone forward fall resulting from a trip to a reasonable degree of medical probability."

¶ 14     During a hearing on defendants' summary judgment motion, the Berkes' attorney asked to cite *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405 (7th Cir. 2014), as additional authority. The circuit court stated that because it is a products liability case, "[i]t's an entirely different standard. So I'm not considering [it]." After hearing arguments, the circuit court granted summary judgment in defendants' favor.

¶ 15     In so ruling, the court granted the defendants' motion to strike those parts of the Berkes' three experts' affidavits offering an opinion as to what caused Raymond to fall. The court stated that the experts' assertions that Raymond fell because of a property defect depended on inadmissible and speculative evidence and were not compliant with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013). The court struck that portion of Siegel's affidavit asserting that the "natural and proper consequence of an individual encountering tripping hazard is that he will more likely than not trip and fall" as predicated on what may have happened, thereby resting on inadmissible conjecture. On Wisniewski's assertions—that "[t]he unreasonable dangerous threshold and unreasonably dangerous door and closure system more likely than not caused Dr. Berke to fall"—the trial court considered them "speculative on their face." As for Dr. Corre's affidavit, the court concluded it "would permit virtually any plaintiff from avoiding summary judgment because it asserts that any healthy person would not trip and fall unless it was caused by a dangerous condition."

¶ 16     The trial court then entered summary judgment because Raymond failed to establish proximate cause. Relying on *Strutz v. Vicere*, 389 Ill. App. 3d 676 (2009), the trial court held that, as in *Strutz*, no one saw Raymond fall, and the court "cannot utilize expert evidence linking a defect of the property to a fall when there was no admissible evidence linking the defect to the fall." The trial court also stated that "[u]nlike *Strutz*, there was a witness who only heard the fall, and it is unrefuted that Mr. Cooney did not hear anything else, which is evidence

- 4 -

that the door did not hit plaintiff or that plaintiff tripped over the thresholds."

¶ 17                                    ANALYSIS
¶ 18                                Experts' Affidavits
¶ 19      Before turning to the trial court's summary judgment order, we address the decision to strike parts of the experts' affidavits setting forth an opinion on the cause of Raymond's fall. The Berkes contend the affidavits meet all of the requirements of Illinois Supreme Court Rule 191, and thus, the trial court erred in striking them.

¶ 20      Under Rule 191, an affidavit offered in support of or in opposition to a motion for summary judgment must (1) be made on the personal knowledge of the affiants, (2) set forth with particularity the facts on which the claim is based, (3) attach sworn or certified copies of documents the affiant relied on, and (4) consist of facts admissible in evidence, not conclusions. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 21      An affidavit submitted in the summary judgment context serves as a substitute for testimony at trial. *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587 (1971). The trial court may not consider evidence that would be inadmissible at trial when assessing a motion for summary judgment. *Safeway Insurance Co. v. Hister*, 304 Ill. App. 3d 687, 691, (1999). Therefore, strict compliance with Rule 191(a) is necessary "to insure that trial judges are presented with valid evidentiary facts upon which to base a decision." *Solon v. Godbole*, 163 Ill. App. 3d 845, 851 (1987). Affidavits in opposition to motions for summary judgment must consist of facts admissible in evidence as opposed to conclusions, and conclusory matters may not be considered in opposition to motions for summary judgment. *Id.* Additionally, "[a]n expert's opinion is only as valid as the reasons for the opinion." *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 400-01 (2007). Expert opinions relying on speculation, conjecture, or guess as to what the witness believed might have happened are inadmissible. *Id.* at 401 (citing *Modelski v. Navistar International Transportation Corp.*, 302 Ill. App. 3d 879, 886 (1999)). When experts (i) fail to take into consideration a party's actions, (ii) base their opinions on facts not in evidence, (iii) base their opinions on what might have happened, and (iv) ignore significant factors, the court will reject the experts' opinions as mere speculation and conjecture. *Damron v. Micor Distributing, Ltd.*, 276 Ill. App. 3d 901, 909 (1995). A motion to strike affidavits in conjunction with the granting of summary judgment is reviewed *de novo*. *Collins v. St. Paul Mercury Insurance Co.*, 381 Ill. App. 3d 41, 46 (2008).

¶ 22      Because all three expert witness affidavits are speculative, the trial court did not err in striking them.

¶ 23      Arnold Siegel, an accident reconstructionist, averred that:
        "Passing through a doorway is an action that is so common and familiar that individuals typically look forward towards the passage route or door handle and not downward; creating a severely high risk of tripping and falling when obstacles obstruct the passage route. Dr. Berke was likely looking forward towards the passage route or door handle, he did not expect to encounter the 7½ x 2¼ x 12½ inch threshold, causing him to trip and fall forward. Raymond Berke was found with his feet 2-5 inches from the door or the threshold and his head on the 2nd step of the stairway. *** Raymond Berke encountered the severe tripping hazard because he was found on or past the

tripping hazard in the direction of egress travel. The natural and probable consequence of an individual encountering a tripping hazard is that he will more likely than not trip and fall.

\* \* \*

The unreasonably dangerous condition of the doorway more likely than not caused Raymond Berke to trip and fall forward with motion.

\* \* \*

For the aforementioned reasons, it is my opinion that [the] threshold and fast heavy closing door at issue were unreasonably dangerous, that Defendants were negligent in failing to comply with regulations and standards that put them on notice of those dangerous conditions, and that Raymond Berke was caused to trip and fall by that threshold as he passed through the doorway with its fast closing and heavy door."

¶ 24 Siegel's opinion as to what caused Raymond to fall turns on nothing more than conjecture. He presumes Raymond was "likely" looking forward because that is what people "typically" do. He also asserts Raymond was not expecting to encounter the threshold, despite the fact that he had crossed it twice on his way out of and back into the building only minutes before his fall. Raymond himself could not shed light on this question because he had no recollection of his fall or what may have been its cause.

¶ 25 Similarly speculative is Wisniewski's opinion on the cause of the fall. Wisniewski set out measurements of the doorway and rear exit and the tests he performed on the door, showing that it closed too quickly under industry standards. Then, he opined that Raymond might have caught his foot on the threshold as the door was closing and concluded that "[t]he unreasonably dangerous threshold and unreasonably dangerous door and closure system more likely than not caused Dr. Berke to fall." No evidence shows that the door closed on Raymond as he was walking through. Indeed, Cooney, the doorman, testified that he saw the door close after Raymond walked through it.

¶ 26 The Berkes contend, however, that Siegel's and Wisniewski's affidavits should not have been stricken because a causation expert may draw and rely on factual inferences as the basis for his or her opinions. They also contend that "an expert's causation testimony is not inadmissible simply because it is 'couched in terms of probabilities or possibilities based upon certain assumed facts.' " *Donaldson v. Central Illinois Public Service Co.*, 313 Ill. App. 3d 1061, 1076 (2000) (quoting *McKenzie v. SK Hand Tool Corp.*, 272 Ill. App. 3d 1, 8 (1995)). Plaintiff cites *Murphy v. General Motors Corp.*, 285 Ill. App. 3d 278, 284 (1996), for support. In *Murphy*, the plaintiffs alleged that Palos Auto & Glass had negligently performed repairs on the driver's seat of a vehicle that later slid backward off its track and injured the plaintiffs. Following the accident, another repair shop disposed of the seat and its frame. The trial court struck the affidavit of plaintiffs' expert and granted summary judgment for Palos, finding that " '[w]ithout the seat frame this case is thrown into a speculative arena.' " *Id.* at 281. The appellate court reversed. Although plaintiffs' expert did not inspect the actual seat involved in the incident, he reviewed the seat's design and specifications, as well as the depositions of mechanics at both repair shops. The record contained enough circumstantial evidence to support the expert's opinions that Palos' work caused the seat to collapse and that Palos should have replaced the seat instead of repairing it. The court found that these fact questions were for the jury, making summary judgment for Palos improper. *Id.* at 283.

¶ 27    The Berkes argue that as in *Murphy*, Siegel and Wisniewski made inferences based on known facts and that the jury should be allowed to weigh those facts. We disagree. First, unlike this case, in *Murphy*, the record contained sufficient circumstantial evidence to support the experts' opinions that defendant's work on the car caused the seat to collapse. For instance, the owner of the shop that repaired the seat before the accident said in his deposition that GMC standards were not followed and the owner of the auto repair business where the car was taken after the accident gave a deposition testifying that when he examined the seat, he noted that the seat frame had been welded, which indicated to him that it had previously broken and that he noticed a "bend" in the seat frame located within two inches of the weld. From these statements, the court concluded, a jury could infer that the seat was not in the condition in which GMC delivered the car. *Id.*

¶ 28    The main parties deposed, Raymond, Carol, and Cooney, offer no circumstantial evidence from which to infer what happened, as they did not witness or remember it. Wisniewski asserts that Cooney admitted the door could close as someone falls through it and that Raymond may have caught his foot on the threshold as the door was closing. But that is not what Cooney said he saw happen. Cooney testified, "What I did see was [Raymond] went through [the door] and the door closed behind him." Thus, Wisniewski's opinion is not based on known facts but rather on what could have happened. (Cooney testified, "I couldn't tell you particularly how he stepped on the door step.") In the absence of facts supporting Siegel's and Wisniewski's conjectures, the trial court did not err in striking those parts of their affidavits.

¶ 29    Lastly, Dr. Corre's affidavit asserted, based on his review of the materials, including records from St. Joseph Hospital, that it is "more likely than not, no acute chronic medical condition/s and/or illness/es caused Raymond Berke to collapse, lose his balance or fall on 11/2/10 ***. Simply put, the materials do not support that any acute medical condition caused his fall. Raymond Berke's abrasions to his legs and face are more likely the result of a prone forward fall resulting from a trip to a reasonable degree of medical certainty." Like the other experts' affidavits, Dr. Corre speculates. While Dr. Corre may be correct in asserting that Raymond's fall was not caused by a medical condition, it does not necessarily follow that it was caused by his having tripped. Because this portion of his affidavit was based on speculation, the trial court did not err in striking it.

¶ 30                                Summary Judgment

¶ 31    Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, show an absence of any genuine issue of material fact and entitlement to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305 (2005). In determining whether a genuine issue of material fact exists, the trial court strictly construes the pleadings, depositions, admissions, and affidavits against the movant and liberally in favor of the opponent. *Adames v. Sheahan*, 233 Ill. 2d 276, 295-96 (2009). The party moving for summary judgment need not prove its case or disprove the nonmovant's case. *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 974 (1990) (quoting *Waite v. Chicago Transit Authority*, 157 Ill. App. 3d 616, 619 (1987)). Rather, the movant is entitled to summary judgment by demonstrating the absence of a genuine issue of material fact. *Id.* (quoting *Waite*, 157 Ill. App. 3d at 619). The nonmoving party may defeat a claim for summary judgment by demonstrating that a question of material fact exists. *Sheahan*, 233 Ill. 2d at 296.

- 7 -

Although the nonmoving party also need not prove his or her case at the summary judgment stage, he or she must come forth with some evidence that arguably would entitle recovery at trial. *Ross v. Dae Julie, Inc.*, 341 Ill. App. 3d 1065, 1069 (2003). We review *de novo* an order granting summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 32     To establish a premises liability negligence claim, the plaintiff must present sufficient factual evidence to establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). Proximate cause is an essential element of a negligence claim. *Bermudez v. Martinez Trucking*, 343 Ill. App. 3d 25, 29 (2003). Generally, proximate cause presents a question of fact; however, it becomes a question of law when the facts alleged indicate that a party would never be entitled to recover. *Id.* at 29-30. Accordingly, a plaintiff who fails to establish the element of proximate cause has not sustained his or her burden of making a *prima facie* case and summary judgment is proper. *Mann v. Producer's Chemical Co.*, 356 Ill. App. 3d 967, 972 (2005).

¶ 33     Proximate cause consists of two requirements: cause in fact and legal cause. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004). For a defendant's conduct to be a "cause in fact" of the plaintiff's injury, the conduct must form "a material element and a substantial factor in bringing about the injury." *Id.* If the plaintiff's injury would not have occurred absent the defendant's conduct, then the conduct forms a material element and substantial factor in bringing about the injury. *Id.* On the other hand, "legal cause" involves an assessment of foreseeability and the court must consider whether the injury is of the type that a reasonable person would foresee as a likely result of his or her conduct. *Id.*

¶ 34     To establish proximate cause, the plaintiff bears the burden of " 'affirmatively and positively show[ing]' " that the defendant's alleged negligence caused the injuries for which the plaintiff seeks to recover. *Bermudez*, 343 Ill. App. 3d at 29 (quoting *McInturff v. Chicago Title & Trust Co.*, 102 Ill. App. 2d 39, 48 (1968)). Liability against a defendant cannot be predicated on speculation, surmise, or conjecture. *Mann*, 356 Ill. App. 3d at 974 (citing *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 795-96 (1999). Thus, the plaintiff must establish with "reasonable certainty" that the defendant's acts or omissions caused injury. *Mann*, 356 Ill. App. 3d at 974.

¶ 35     The plaintiff may establish proximate cause through circumstantial evidence. *Id.* That is, causation may be established by facts and circumstances that, in the light of ordinary experience, reasonably suggest that the defendant's negligence operated to produce the injury. *Id.* It is not necessary that only one conclusion follow from the evidence. *Id.* But, a fact cannot be established through circumstantial evidence unless the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn. *Wiegman*, 308 Ill. App. 3d at 796. Indeed, where the proven facts demonstrate that the nonexistence of the fact to be inferred appears to be just as probable as its existence, then the conclusion is a matter of speculation, conjecture, and guess and the trier of fact cannot be permitted to make that inference. *Mann*, 356 Ill. App. 3d at 974.

¶ 36     The Berkes argue Raymond's injury occurred when he tripped over the threshold at the west exit because it was unreasonably high and violated numerous building codes and industry standards. No direct evidence of proximate cause exists, so the Berkes argue that (i) the expert's affidavits, (ii) the height of the threshold, (iii) the position in which Raymond was

found, (iv) the abrasions on Raymond's knees and face, (v) the absence of any other reason for the fall, (vi) a prior fall in the vestibule, and (viii) testimony that Raymond was walking normally and appeared healthy on the day of the accident permit the inference that the cause was the high threshold and the door closing too fast. In response, defendants argue that reasonable jurors could not base a verdict on one identifiable cause over another without guessing as to whether the condition of the threshold and door caused Raymond to fall.

¶ 37    We agree with defendants. The Berkes have not "affirmatively and positively shown" with "reasonable certainty" that Raymond fell because he tripped over the threshold or was propelled forward by a door that closed too quickly. No direct evidence shows why Raymond fell, because he has no recollection and, although Cooney, the doorman, heard Raymond hit the ground, he did not see or hear what made him fall. Moreover, the Berkes cannot establish causation through circumstantial evidence. Although a trier of fact could infer that Raymond, who was observed to be walking at a rapid pace, tripped over the threshold or was propelled forward by the door, it is equally likely that a jury could conclude that he fell for reasons unrelated to the condition of the premises.

¶ 38    Two cases, *Strutz v. Vicere*, 389 Ill. App. 3d 676 (2009), and *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968 (1990), are instructive. In *Strutz*, plaintiff's husband sustained injuries when he allegedly slipped and fell on the back staircase at a two-flat apartment building owned by defendants. No one saw him fall. The plaintiff testified that when she found her husband on the back stairs and asked what happened he said, " 'I fell down over the railing.' " *Strutz*, 389 Ill. App. 3d at 677. The husband died a few weeks later, and plaintiff brought a negligence and wrongful death action against the defendants. In an affidavit, the plaintiff's expert architect averred that the steps were dangerous because they violated the City of Chicago building code. He opined that the stairs were unreasonably dangerous because the treads were too small (which made the stairs excessively steep), the tread widths were inadequate and uneven, the staircase was inadequately lit, the handrail in the center was too low, and there was no handrail on the wall side of the stairs. The trial court granted summary judgment in favor of the defendants. *Id.* at 678.

¶ 39    The appellate court held the violations by themselves did not establish proximate cause, absent any evidence that the safety violations caused the injury. The court further concluded that the plaintiff's statement that he " 'fell down over the railing' " did not explain the cause of the fall and could not create a genuine issue of material fact as to causation. *Id.* at 681.

¶ 40    Likewise, in *Kellman*, no one witnessed the decedent's fall. *Kellman*, 202 Ill. App. 3d at 970-71. The decedent, Kellman, was taking a shower in a country club locker room when he fell and fractured his spine. Another club member, who was also taking a shower, heard a "thud" and found Kellman lying face down in the shower stall. Kellman's family filed a negligence lawsuit and relied on expert testimony to establish the condition of the stall and the manner in which he fell. The country club moved for summary judgment, arguing that there were no eyewitnesses to the fall and that the plaintiff was unable to prove causation. The trial court granted summary judgment, and the appellate court affirmed. The court noted that none of the testimony addressed the issue of what caused Kellman's fall and concluded that the mere possibility an unreasonably dangerous condition in the stall had caused the fall was not enough to establish a causal relationship between the defendant's alleged negligence and Kellman's injuries. *Id.* at 975.

¶ 41    As in *Strutz* and *Kellman*, no one saw Raymond fall. Even if, as the Berkes assert, the threshold and door created a dangerous condition, this is not sufficient to establish a causal connection between defendants' alleged negligence and Raymond's injuries. Therefore, the conclusion advocated by plaintiffs embraces speculation, surmise, and conjecture. See *Mann*, 356 Ill. App. 3d at 974; see also *Bakkan v. Vondran*, 202 Ill. App. 3d 125, 131 (1990). A trier of fact cannot be permitted to make that inference. See *Wiegman*, 308 Ill. App. 3d at 795-96. The conclusion that the height of the threshold caused Raymond to fall formulates merely a possible conclusion, not a probable conclusion. See *id.* at 796. This is not a case in which the plaintiff and defendant both presented evidence of proximate cause and a jury should be called on to resolve the dispute. See *Mann*, 356 Ill. App. 3d at 974. Thus, absent direct or circumstantial evidence of proximate cause, the Berkes have failed to make a *prima facie* case of negligence, and summary judgment was proper. See *id.* at 972.

¶ 42    We also note that the Berkes contend the west exit violated building codes and industry standards because the threshold was too high, the landing was too small, and the door closed too quickly. They assert that all of these violations created an unexpected tripping hazard, which was exacerbated by the lack of any warning signs. Even if, as plaintiffs assert, defendants breached their duty of reasonable care by failing to remove a hazardous exit, this does not constitute evidence of causation. Violations of an ordinance or failure to comply with the building code by themselves, without evidence that the violation caused the injury, do not establish proximate cause. *Strutz*, 389 Ill. App. 3d at 681. The possibility that the allegedly unreasonably dangerous exit caused Raymond to trip fails to provide the necessary causal relationship between defendants' alleged negligence and Raymond's injuries.

¶ 43    Absent any evidence of the cause of Raymond's fall, there is no genuine issue of material fact for the trier of fact to determine.

¶ 44                                Supplemental Authority

¶ 45    The Berkes argue the trial court abused its discretion in failing to grant their motion to cite *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405 (7th Cir. 2014), as supplemental authority. In *Stuhlmacher*, the purchasers of a ladder brought a products liability claim against a home improvement store and the ladder's manufacturer after their son sustained injuries when the ladder fell the first time it was used. Plaintiffs' expert witness testified that the ladder's rivets were overtightened during manufacturing, which created a weakened connection that would have caused the plaintiffs' son to sense a change in the ladder's stiffness and to involuntarily move his weight left, causing the ladder to tumble. The trial court struck this testimony as incompatible with the plaintiffs' son's testimony that the ladder never became unstable. Thus, the plaintiffs could not show a causal link between the alleged defect and the accident. *Id.* at 408. The appellate court reversed. It held that the expert's testimony satisfied the relevancy standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because it was reliable and would assist the trier of fact in determining some fact at issue. *Stuhlmacher*, 774 F.3d at 409. Further, given the circumstances of the case, the court determined that the correctness of the expert's theory involved a fact issue left for the jury. A jury could have found that the expert's theory of the accident was credible and the plaintiff's testimony reflected his memory of the event as it was happening. *Id.* Similarly, according to the Berkes, a jury should hear their experts' testimony and decide whether it supports their argument that Raymond tripped over the threshold.

¶ 46    But, unlike in *Stuhlmacher*, no evidence exists as to what happened to Raymond that caused him to fall. Although the plaintiff in *Stuhlmacher* offered testimony that did not necessarily comport with the expert's theory, he did recall his accident and offered his own version of what happened. No testimony or other evidence shows what caused Raymond to fall. Thus, there is no factual issue for the jury to decide, and the trial court properly denied the Berkes' request to cite *Stuhlmacher* as additional authority.

¶ 47    Affirmed.

¶ 48    JUSTICE GORDON, specially concurring.

¶ 49    I concur with the majority, but I write separately on plaintiffs' request to cite additional authority. I believe that a court learns about the case before them through the lawyers in their presentation, pleadings, and the authority they cite, and the court's independent analysis of the law. As a result, I do not believe it is correct for a trial judge to deny the tender of additional authority. In the case at bar, it appears that the court denied the cite as additional authority only because she was familiar with the case cited and did not find it instructive as to the facts before her. The act of the court in denying the cite as additional authority has no affect on the outcome of the trial court's decision in this case or on this appeal.