NOTICE

Decision filed 03/07/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220416-U

NO. 5-22-0416

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| CHAD J. STROHKIRCH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-L-1347 |
| | ) | |
| NATIVE ROOTS, INC., d/b/a Duke's Cabaret Lounge, | ) | |
| and Its Owner, STEPHANIE L. GRAHAM, | ) | Honorable |
| | ) | Christopher P. Threlkeld, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in granting summary judgment in favor of defendants where plaintiff failed to establish what caused him to fall, and security camera video footage did not reveal what caused him to fall.

¶ 2    The plaintiff, Chad Strohkirch, filed his first amended complaint bringing a claim for premises liability negligence against the defendants, Native Roots, Inc., d/b/a Duke's Cabaret Lounge (Duke's), and its owner, Stephanie Graham, to recover damages for injuries he sustained when he fell as he exited Duke's. Following discovery, the defendants filed a motion for summary judgment. The trial court granted the motion. The plaintiff filed a motion to reconsider which was denied by the trial court. The plaintiff filed a timely appeal alleging that the trial court erred when it granted the defendants' motion for summary judgment. For the following reasons, we affirm.

1

¶ 3                    I. BACKGROUND

¶ 4     On October 12, 2017, after working around the house all day, the plaintiff and his girlfriend drove to Duke's for a sandwich and a "couple of beers." The plaintiff recalled that it was not raining when they arrived at Duke's around 7 p.m. He did not notice any defects or dangerous conditions with the doorway or vestibule as he entered the building, nor did he have any trouble getting through the interior or exterior doorways. The plaintiff sat down, ordered a beer, and played the poker machine for a while.

¶ 5     Shortly after arriving, the plaintiff went back out to his car to retrieve his girlfriend's purse. He later went back outside to smoke. On neither occasion did the plaintiff have trouble navigating the doorways. During the hour or so that he was at Duke's, the plaintiff consumed two beers, but he was not drunk.

¶ 6     The plaintiff testified at his deposition that he sustained injuries to his ankle when he fell upon exiting the vestibule from Duke's. The vestibule was a small, triangle shaped area with a mat on the floor as soon as a patron entered. There was approximately a few feet of void space to the right. The entrance into Duke's was not handicap accessible. Two days after the plaintiff fell, he went to the hospital seeking medical treatment.

¶ 7     The plaintiff had been going to Duke's to eat about once a month for approximately 10 years, entering and exiting through the same set of doors because they were the only doors into the building. Although to the plaintiff's knowledge the thresholds of the doors into Duke's had not changed during the years he had been going there, he noted that at times over the years a bench or carpet might be added to the vestibule. On the occasions prior to his fall when the plaintiff went to Duke's when it was dark outside, he noted that the vestibule and doorways were not lit up, although

2

there was a streetlight out front. The plaintiff testified that he believed the poor lighting affected his ability to see.

¶ 8     Although the plaintiff had been to Duke's on at least 120 occasions, he had never tripped in the vestibule before the date in question. He had heard from the bartender who worked at Duke's that a lot of other people had fallen out the doorway, but the plaintiff had never seen anyone else fall.

¶ 9     The plaintiff testified that prior to the date of his fall, he had never noticed a defective condition with the doorways or vestibule, nor had he complained about any defective conditions. The plaintiff stated in his deposition, "Everybody just dealt with it." However, later in his deposition, he stated there was a two- to three-inch concrete lip on the exterior and interior of the door going from the inside of the building into the vestibule.

¶ 10     The plaintiff also did not know whether any employee or person with relationship to Duke's had knowledge of any dangerous condition with the doorways or vestibule. The plaintiff later testified that the owner of Duke's knew about the dangerous condition at the doorways or vestibule because the plaintiff had witnessed one of the bartenders and other customers tell her about the conditions "all the time." He further testified that he had heard numerous other patrons complain to the defendants about the two- to three-inch concrete lip leading into the vestibule, and they refused to do anything about it.

¶ 11     The plaintiff went outside for a second time to smoke. He was not distracted when he fell, although he was holding a cigarette in one hand and a lighter in the other. In his deposition, the plaintiff described what happened as he left the building:

"A. I went out. I was walking out the front door and my—and my foot—

my right foot got hung up on the—something, and I thought I had it loose, and I

3

went to step out and my heel—my left foot of my heel kind of landed on the—like the edge of that thing, and my right foot was still kind of hooked on there, and that's when I—that's when I went down, trying to catch myself with my right foot, and it spun my ankle around.

I remember seeing the bottom of my tennis shoe, and I went to try to go get up, and I'm trying to put pressure back on my right foot and put me in right in the—there was—I know I remembered seeing a bench out there, but I didn't see no benches out there, no bench. Maybe—I might have broke it when I fell into it.

\* \* \*

Q. Do you know what you think the right foot got hung up on?

A. No, I have no—I mean it had—it had to be something right here. That rug, that chunk of shit, setting up right there, but—and I thought I kicked it loose, whatever it was, but when I didn't, I stepped out and my—half of my foot landed on this that's hanging out way past that threshold, hung up right there, and half of my foot, and then that's what flipped me forward.

\* \* \*

A. I mean I've told you a hundred times. It happened so fast, I don't remember, you know, what happened. I remember falling up against the building twisting my ankle, feeling my ankle snap and going up against the door.

\* \* \*

Q. And as you sit here today do you know what your foot got hung up on? Do you know for certain?

4

A. Well, I mean I can't answer that. No. The rug, the ripped-up tile. There could have been another brick laying there. I don't know. There could have been a pair of tennis shoes there. There could have been a smoking thing—there. I don't know. I mean—"

¶ 12 During the deposition, the plaintiff viewed security camera video footage from Duke's from the date of his fall. The security footage depicted the plaintiff entering and exiting Duke's at various times throughout the evening without incident. The security footage also showed that when the plaintiff exited the building to smoke for the first time that evening, he was carrying a beer.

¶ 13 After watching the footage, the plaintiff was asked to describe what he saw:

"A. I seen my foot get hung up on something right there, and when I went to step, I stepped on that ledge right there, this—halfway on that ledge, and I was still hung up back here and that, and I tried to catch myself, that's what flipped me on the ground."

¶ 14 The plaintiff testified that either the tiling, linoleum, or the rug caught his foot. When asked if the security footage showed him trip or stumble on the threshold at the interior door that he had previously described as a two-inch drop, the plaintiff responded that he did not know and could not answer.

¶ 15 On November 6, 2019, the plaintiff filed his amended complaint alleging that the defendants breached the duty of care in the operation and maintenance of the premises thereby proximately causing his injuries. The plaintiff further alleged that the defendants negligently caused and permitted the premises to become and remain in a dangerous and unsafe condition for customers.

5

¶ 16   On November 18, 2021, following discovery, the defendants filed a motion for summary judgment arguing that the plaintiff failed to show that an unreasonable risk of harm existed on the premises; that any act or omission of the defendants proximately caused his fall; that the defendants had actual or constructive notice of a dangerous or defective condition; and, alternatively, that the condition complained of was open and obvious.

¶ 17   Attached to the motion for summary judgment was the affidavit of the defendant Stephanie Graham. In her affidavit, the defendant averred that she had no notice of dangerous or defective conditions in the area of the plaintiff's fall on October 12, 2017. After his fall, she examined the area and found no dangerous or defective conditions. The defendant was not aware of any other trips, falls, or injuries occurring in that area prior to the time the plaintiff fell.

¶ 18   Also attached as an exhibit to the motion for summary judgment was security camera video footage from the date the plaintiff fell. Although the security footage captured the moment of the plaintiff's fall, it did not reveal what caused him to fall. Review of the security footage reveals that, contrary to the plaintiff's deposition testimony, the vestibule area was well lit.

¶ 19   On December 29, 2021, the plaintiff filed his response to the motion for summary judgment arguing the condition of the vestibule posed an unreasonable risk of harm; that the dangerous conditions in the defendants' vestibule were the proximate cause of his injuries; that the defendants had actual and constructive notice of the dangerous conditions in the vestibule; and, alternatively, the conditions in the vestibule were not open and obvious.

¶ 20    On March 14, 2022, the defendants filed their reply asserting that the plaintiff failed to establish an unreasonable risk where he made conclusory statements about the general condition of the vestibule and where the evidence did not support a connection between those alleged conditions and the plaintiff's fall.

6

¶ 21 The trial court, in granting the motion for summary judgment, found that the plaintiff was unable to identify the cause of his fall and that the security footage of the fall itself did not show that the plaintiff tripped on any portion of the defendants' premises.

¶ 22                                    II. ANALYSIS

¶ 23 "Appellate review of a trial court's grant of summary judgment is *de novo*," and reversal will occur only if a genuine issue of material fact is found to exist. *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1027 (2005). Summary judgment should be rendered where the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). The trial court strictly construes the pleadings, depositions, admissions, and affidavits against the movant and liberally in favor of the nonmoving party in determining whether a genuine issue of material fact exists. *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. "The nonmoving party may defeat a claim for summary judgment by demonstrating that a question of material fact exists." *Id.*

¶ 24 "To establish a premises liability negligence claim, the plaintiff must present sufficient factual evidence to establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Id.* ¶ 32. "If the plaintiff cannot establish any element of her cause of action, summary judgment for the defendant is proper." *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, 2011 IL App (1st) 092860, ¶ 14. "The issue of proximate cause in a negligence action is generally an issue of material fact to be decided by the trier of fact; however, if the facts as alleged show that the plaintiff would never be entitled to recover, proximate cause can be determined by a court as a matter of law." *Strutz v. Vicere*, 389 Ill. App. 3d 676, 678-79 (2009).

7

¶ 25    At the outset, we address whether the plaintiff was able to establish that a defective condition existed in the vestibule area that proximately caused his fall as we find this issue to be dispositive.

¶ 26    "The occurrence of an accident does not support an inference of negligence, and, absent positive and affirmative proof of causation, plaintiff cannot sustain the burden of establishing the existence of a genuine issue of material fact." *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 974 (1990). "It is well settled that liability cannot be predicated upon surmise or conjecture as to the cause of an injury, and therefore proximate cause can be established only when there is a reasonable certainty that the defendant's act caused the injury." *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 795 (1999).

¶ 27    "The defendant's conduct must be shown to be an actual cause of the plaintiff's injury, and it must be a legal cause as well." *Simmons v. Garces*, 198 Ill. 2d 541, 558 (2002). To establish that a defendant's conduct is a cause in fact of the plaintiff's injuries, that conduct must be a material element and a substantial factor in bringing about the injury. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004). "A defendant's conduct is a material element and substantial factor in bringing about the injury if, absent that conduct, the injury would not have occurred." *Id.* "On the other hand, 'legal cause' involves an assessment of foreseeability[,] and the court must consider whether the injury is of the type that a reasonable person would foresee as a likely result of his or her conduct." *Berke*, 2016 IL App (1st) 150397, ¶ 33 (citing *Abrams*, 211 Ill. 2d at 258).

¶ 28    The plaintiff may establish proximate cause via the presentation of either circumstantial or direct evidence. *Id.* ¶ 35. Although causation may be established by facts and circumstances that reasonably suggest that the defendant's negligence operated to produce the plaintiff's injury, "a fact cannot be established through circumstantial evidence unless the circumstances are so related

8

to each other that it is the only probable, and not merely possible, conclusion that may be drawn." *Id.*

¶ 29   For our analysis, we look to *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813 (1981), the seminal decision on proximate cause in slip-and-fall cases. In *Kimbrough*, the plaintiff fell on a ramp as she was leaving the defendant's store. *Id.* at 814. The plaintiff admitted that she did not know why she had fallen or whether she had slipped on the grease spots that were present on the ramp. *Id.* at 816. Furthermore, the plaintiff produced no evidence of an object lying on the defendant's premises or a defect in the ramp that caused her to fall; nor did she establish that if these items existed, they caused her fall. *Id.* at 817. The *Kimbrough* court found that because the plaintiff failed to establish a causal connection between her fall and any condition under the defendant's control, summary judgment was proper. *Id.* at 818.

¶ 30   In the case at bar, the plaintiff seeks to establish through circumstantial evidence the inference that a defective condition existed in the vestibule. However, after careful review of the record in the light most favorable to plaintiff, we cannot find this inference is reasonable based on the evidence presented. Although given many opportunities to do so in his deposition, the plaintiff failed to state explicitly what caused him to fall. Rather, he speculated that he could have tripped on the rug, the ripped tile, the two- to three-inch concrete lip, the linoleum, a brick, or even a pair of tennis shoes located in the vestibule. It is noteworthy that even after watching the security footage in his deposition, the plaintiff could not state what caused him to fall. "[W]here the proven facts demonstrate that the nonexistence of the fact to be inferred appears to be just as probable as its existence, then the conclusion is a matter of speculation, conjecture, and guess and the trier of fact cannot be permitted to make that inference." *Berke*, 2016 IL App (1st) 150397, ¶ 35.

¶ 31    Additionally, although the plaintiff contended that other patrons had complained to the defendants about the dangerous condition that existed, he did not produce affidavits from such individuals in support of that contention. "An affidavit submitted in the summary judgment context serves as a substitute for testimony at trial." *Id.* ¶ 21. If the plaintiff knew of persons who had knowledge favorable to him, it was his right to obtain affidavits from them or inform the court as to why he was unable to do so. *Kimbrough*, 92 Ill. App. 3d at 819. While the nonmoving party need not prove his case at the summary judgment stage, he must present some evidentiary facts to support the elements of his cause of action. *Newsom-Bogan*, 2011 IL App (1st) 092860, ¶ 21.

¶ 32    Here, the only evidence offered by the plaintiff in support of his contention that the defendants were aware of the condition of the vestibule was hearsay testimony as to what he overheard others telling the defendants. " 'Evidence that would be inadmissible at trial is not admissible in support of or in opposition to a motion for summary judgment.' " *Koulogeorge v. Campbell*, 2012 IL App (1st) 112812, ¶ 34 (quoting *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 108 (2009)).

¶ 33    Accordingly, the plaintiff has failed to establish the existence of an element of his case, *i.e.*, proximate cause, and the defendants are entitled to summary judgment.

¶ 34                                III. CONCLUSION

¶ 35    For the foregoing reasons, we affirm the trial court's grant of summary judgment.


¶ 36    Affirmed.