# Illinois Official Reports

## Appellate Court

---

**_Robles v. City of Chicago_, 2014 IL App (1st) 131599**

---

| | |
|---|---|
| Appellate Court Caption | LUZ YDIRA ROBLES, as Special Administrator of the Estate of Juan Carlos Robles, Deceased, Plaintiff-Appellant, v. THE CITY OF CHICAGO, a Municipal Corporation, and UNKNOWN CITY OF CHICAGO POLICE OFFICERS, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-13-1599 |
| Filed | April 9, 2014 |
| Rehearing denied | June 13, 2014 |
| Modified opinion filed | June 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The immunity provided by section 2-202 of the Tort Immunity Act applied to the police officers who were engaged in enforcing the law when plaintiff's decedent was shot in the back, and pursuant to section 2-202 of the act, negligent acts are immunized, but willful and wanton misconduct is not; therefore, in view of the existence of a triable issue of material fact as to whether the fatal shots were the result of willful and wanton misconduct, the entry of summary judgment for the police and defendant city was reversed and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-1098; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Collins Law Firm, P.C., of Naperville (Edward J. Manzke, of counsel), for appellant. |
| --- | --- |
| | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Jonathon D. Byrer, Assistant Corporation Counsel, of counsel), for appellees. |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Pucinski concurred in the judgment and opinion. |

## OPINION

¶ 1 Luz Robles, as special administrator of the estate of Juan Robles, sued the City of Chicago (City), alleging that City police committed willful and wanton misconduct when they shot and killed Juan. The trial court granted the City's motion for summary judgment, holding that the general immunity for discretionary acts barred recovery from the City, even for its officers' willful and wanton misconduct. In this appeal, we hold that under section 2-202 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-202 (West 2008)), the estate may recover damages from the City if its officers acted willfully and wantonly when they shot Juan in the course of enforcing the law. We also find that the evidence presents a triable issue of fact as to whether police officers acted willfully and wantonly. We reverse the judgment entered in favor of the City and remand for proceedings in accord with this opinion.

¶ 2 BACKGROUND

¶ 3 On September 26, 2009, near the corner of 76th Street and Kinzie, Chicago police officer Ivan Lopez shot Juan Robles twice in the back. Juan died from his wounds. Police impounded Juan's car and later destroyed it. A camera at a business located at 76th and Kinzie recorded a video of the area on September 26, 2009. Two days later, an investigator for the "Independent Police Review Authority" (IPRA), a unit of the Chicago police department, viewed that videorecording. The videorecording subsequently disappeared.

¶ 4 On January 26, 2010, a court appointed Luz to act as special administrator of Juan's estate for purposes of prosecuting any cause of action arising from Juan's death. Luz sued the City, alleging that the officers committed willful and wanton misconduct when they shot Juan and destroyed his car. She added a count charging the City with failing to preserve the videorecording of the scene, but the trial court dismissed that count with prejudice on grounds that the business, not the City, had control of the videorecording when it disappeared.

¶ 5    In 2010, Luz took depositions from several officers who saw the shooting. IPRA investigators recorded statements from several of the officers in December 2011. The City moved for summary judgment, and it attached excerpts from the depositions to its motion. Luz responded with a number of documents, including diagrams of the scene she said police made near the time of the shooting and a document which purportedly showed that Juan did not own the gun police said he held when Lopez shot him.

¶ 6    The depositions and statements of the officers describe the framing events fairly consistently. A call went out to officers on September 26, 2009, telling them that officers chasing Juan as he drove needed help with the chase. At least four cars, with nine officers, took part in the chase. Juan's car headed north on Kedzie, sustaining severe damage when it hit a pickup truck north of 79th Street. The car stopped near the corner of 76th Street and Kedzie, and Juan got out and started running. All of the officers said they saw a gun in Juan's right hand. Some of the officers heard one shout, "police," and "drop the gun." Some heard no speech. Lopez and some other officers said they saw Juan turn to his right and raise his gun, pointing it at the officers.

¶ 7    When he had come within about five feet of Juan, Lopez started shooting. The medical report said that one bullet entered Juan's back 1.2 inches to the right of the midline, 24.5 inches from the top of his head, and it exited his chest 2.0 inches to the right of the midline, 24.1 inches from the top of his head. A second bullet entered Juan's back 2.8 inches to the left of the midline and lodged in the right side of Juan's chest, coursing from left to right and upward.

¶ 8    In the order granting the motion for summary judgment, the court found that Luz had not presented an adequate foundation for several of the exhibits she attached to her response to the motion for summary judgment. The court ignored those exhibits, but said, "the remaining evidence in the record is such that a reasonable person could conclude that either the officers' belief and acts were reasonable or that they were not. In addition, the question of whether the officers' acts were willful and wanton are questions of fact." The court held that the possible finding of willful and wanton misconduct made no difference, because section 2-201 of the Act (745 ILCS 10/2-201 (West 2008)) immunized the City from liability for the officers' actions, even if they committed willful and wanton misconduct in the course of enforcing the law. The court dismissed the count for destruction of Juan's car on grounds that Luz did not present evidence that could support a finding that police destroyed the car negligently. Luz now appeals.

¶ 9                                    ANALYSIS
¶ 10                                 Tort Immunity
¶ 11    We review *de novo* the order granting the motion for summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). The trial court's decision rests on its interpretation of sections 2-201 and 2-202 of the Act. Those sections provide:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2008).

And:

"A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2008).

¶ 12 When section 2-201 applies, it provides immunity for willful and wanton misconduct, as well as negligence. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 230 (2007). By including the prefatory language in section 2-201, "Except as otherwise provided by Statute" (745 ILCS 10/2-201 (West 2008)), the legislature indicated that "section 2-201 immunity is contingent upon whether other provisions, either within the Act or some other statute, creates exceptions to or limitations on that immunity." *Murray*, 224 Ill. 2d at 232.

¶ 13 Section 2-202 creates an explicit exception to the immunities granted in section 2-201. A public entity or public employee has immunity for acts in the course of enforcing any law, "unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2008); see *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 491 (2001). When the officers chased Juan in response to the call from officers seeking to arrest Juan, they engaged in enforcement of the law. See *Morton v. City of Chicago*, 286 Ill. App. 3d 444, 455 (1997); *Davis v. City of Chicago*, 2014 IL App (1st) 122427, ¶¶ 105, 117.

¶ 14 The City argues that section 2-201 applies, with its immunity for willful and wanton misconduct, and section 2-202 does not apply, because the officers' acts in pursuit of Juan required the exercise of discretion. The City has not suggested how any City personnel could ever engage in execution or enforcement of any law without also exercising some discretion. Thus, under the City's construction of the Act, section 2-202 can never apply to any situation, since the broader immunities of section 2-201 will always prevail over the lesser immunity the legislature granted for execution or enforcement of the law in section 2-202. Moreover, the City's construction of the Act ignores the prefatory language of section 2-201, which specifies that its broad immunity does not apply if any other law or statute applies. The City does not deny that its officers were engaged in enforcing the law when they killed Juan. Thus, under the express terms of sections 2-201 and 2-202 of the Act, the immunities of section 2-202 apply, and not the broader immunities of section 2-201. Under section 2-202, Juan's estate may recover damages from the City if the officers acted willfully and wantonly when they shot and killed Juan.

¶ 15                                    Evidence of Willful and Wanton Misconduct

¶ 16 The City claims that the trial court should have granted summary judgment in favor of the City on grounds that the evidence cannot support a finding of willful and wanton misconduct, because the officers all said that they saw a gun in Juan's hand. In her reply to the City's argument on this issue, Luz refers to a number of documents she presented to the trial court, including documents that, according to the trial court, lacked adequate foundation. The City asks us to strike several sections of Luz's reply brief because of the references to the documents without foundation. We grant the motion in part. We will ignore all references to the documents that, according to the trial court, lacked adequate foundation. We see no need to strike the remaining parts of Luz's arguments. See *Rice v. Merchants National Bank*, 213 Ill. App. 3d 790, 796 (1991); *Black v. Iovino*, 219 Ill. App. 3d 378, 386 (1991).

¶ 17 "Whether a person is guilty of wilful and wanton conduct is a question of fact for the jury and should rarely be ruled upon as a matter of law. [Citation.] In determining whether a charge of wilful and wanton conduct ought to have been submitted to the jury, neither the trial court

nor a reviewing court may resolve conflicts in the evidence, decide what weight to apply to the evidence or decide the relative credibility of the witnesses." *Glover v. City of Chicago*, 106 Ill. App. 3d 1066, 1075 (1982).

¶ 18     We agree with the trial court that the potential conflicts between the testimony of the officers and potential conflicts with the physical evidence leave unresolved issues that could support a finding of willful and wanton misconduct. We will not bar the case before Luz has an opportunity to have experts review the physical evidence and to compare it with the testimony and statements of the officers.

¶ 19     The City cites *Davis*, 2014 IL App (1st) 122427, as authority for depriving Luz of the opportunity to complete discovery and have a trier of fact consider the evidence in this case. In *Davis*, a police officer shot Darryl Hamilton in the back, killing him. Hamilton's mother sued the City, alleging that the officer acted willfully and wantonly. The case went to trial. The officer testified that as Hamilton ran from the officer, Hamilton turned and pointed a gun at the officer. The officer said he shot Hamilton because he feared for his life. Medical experts gave conflicting testimony about whether the course of the bullet showed that Hamilton had his back to the officer, or whether he could have turned and pointed a gun at the officer before the officer shot him. *Davis*, 2014 IL App (1st) 122427, ¶¶ 32-37. The court instructed the jurors that to find the City liable for willful and wanton misconduct, they needed to find that the officer deliberately harmed Hamilton without legal justification. *Davis*, 2014 IL App (1st) 122427, ¶¶ 109-13.

¶ 20     We agree with the City that the case now on appeal bears considerable similarity to *Davis*. We find that the evidence here, like the evidence in *Davis*, leaves a triable issue of fact of whether the officer committed willful and wanton misconduct when he shot a fleeing person in the back.

¶ 21     The trial court held that Luz did not present sufficient evidence to show that police acted negligently or wrongfully when they destroyed Juan's car. Luz does not challenge this part of the trial court's ruling. Therefore, we affirm the order dismissing the claim related to the destruction of Juan's car.

¶ 22                                        CONCLUSION

¶ 23     Because the officers engaged in enforcing the law when they pursued and shot Juan, section 2-202 of the Act, rather than 2-201, establishes the applicable immunity. Section 2-202 immunizes the City and the officers from liability for negligent acts, but not for willful and wanton misconduct. The evidence presents a triable issue as to whether the police acted willfully and wantonly when they shot Juan twice in the back and destroyed Juan's car. Accordingly, we reverse the decision granting summary judgment in favor of the City and remand for proceedings in accord with this opinion.

¶ 24     Reversed and remanded.