2023 IL App (4th) 221111
NO. 4-22-1111
IN THE APPELLATE COURT
OF ILLINOIS
FOURTH DISTRICT

FILED
September 19, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| TELECIA BANKS, Special Administrator of the Estate of | ) | Appeal from the |
| Eddie Patterson, Deceased, | ) | Circuit Court of |
|     Plaintiff-Appellant, | ) | Winnebago County |
|     v. | ) | No. 17L347 |
| THE CITY OF ROCKFORD, | ) | |
|     Defendant-Appellee. | ) | Honorable |
| | ) | Lisa R. Fabiano, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Cavanagh and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1     In November 2017, plaintiff, Telecia Banks, special administrator of the estate of

Eddie Patterson, deceased, filed a wrongful death and survival action against defendant, the City

of Rockford (City). The decedent had died during an incident involving a traffic stop by Rockford

police officer Jaimie Cox. In July 2021, the City filed a motion for summary judgment, asserting

plaintiff could not prove (1) Officer Cox breached a duty owed to the decedent, (2) Officer Cox

caused the decedent's death, and (3) Officer Cox's conduct was willful and wanton and thus the

City was immune under the Local Governmental and Governmental Employees Tort Immunity

Act (Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2016)). In February 2022, the Winnebago

County circuit court entered a written order denying the City's motion for summary judgment and

noting plaintiff had presented just enough evidence to survive summary judgment. The City filed

a motion to reconsider contending the court made errors in its application of the law. On December

20, 2022, the court entered a written order granting the City's motion to reconsider and entering summary judgment in the City's favor.

¶ 2        Plaintiff appeals contending (1) two types of willful and wanton conduct exist under Illinois law and (2) she presented sufficient evidence of willful and wanton conduct to avoid summary judgment. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        The parties do not dispute the following facts set forth by the circuit court in its written order. On November 5, 2017, just after 1 a.m., Officer Cox was on duty and observed a white pickup truck driving on East State Street near Dawn Avenue in Rockford, Illinois. Using the mobile data terminal in his squad car, Officer Cox searched the truck's license plate in the Illinois Secretary of State database. The search revealed the license plate had expired around 18 months earlier. Officer Cox then initiated a traffic stop, and both vehicles came to a stop on Dawn Avenue, just off East State Street. At around 1:07 a.m., Officer Cox performed a name search using the Law Enforcement Agency Data System for the name Carl Thurman. That search did not result in any records. At about 1:10 a.m., Officer Cox searched another name, this time for Eddie Patterson with a date of birth of May 9, 1968. That search revealed the decedent did not have a valid Illinois driver's license. At about 1:11 a.m., Officer Cox asked on his police radio, " 'Can I get another unit here?' "

¶ 5        According to the eyewitness testimony of Frank Luyando, who was stopped across East State Street in the McDonalds drive-through, Officer Cox approached the truck, and the driver's door was open. Officer Cox stood there for a few moments close to the vehicle, between the door and the driver, and appeared to be shining a flashlight into the vehicle. Suddenly, the truck drove forward, and Officer Cox moved with the vehicle down Dawn Street and out of sight of the

eyewitness.

¶ 6       Officer Cox was heard over his radio exclaiming " 'He's running.' " The truck eventually collided with a tree where Dawn Street dead ends into the Unitarian Universalist Church. Officer Cox was found unconscious a few yards from the truck, and he later died. The decedent was found dead at the wheel of the truck. The autopsy report revealed the decedent had been shot twice with Officer Cox's service revolver and died of gunshot wounds and blunt force trauma. Any additional facts provided by the parties' supporting documents are set forth in our analysis.

¶ 7       Twelve days later, plaintiff, the decedent's daughter and special administrator of his estate, filed a complaint against the City, asserting wrongful death and survival claims. Specifically, the complaint asserted Officer Cox committed one or more of the following:

"(a) Willfully and wantonly executed or enforced the law;

(b) Willfully and wantonly used deadly force against [the decedent] under circumstances in which [the decedent] presented no threat of death or serious bodily harm to the police officers or any other individual."

In its answer, the City denied the aforementioned allegations and asserted six affirmative defenses, including immunity under the Immunity Act.

¶ 8       In July 2021, the City filed its motion for summary judgment, asserting plaintiff could not prove the following: (1) Officer Cox breached a duty owed to the decedent, (2) Officer Cox proximately caused the decedent's death, and (3) Officer Cox engaged in willful and wanton conduct. The City attached the following documents in support of its motion: (1) plaintiff's complaint; (2) its answer; (3) the deposition of Luyando with exhibits; (4) the decedent's autopsy report; (5) the deposition of plaintiff with exhibits; (6) the deposition of Marquista Hunter, the

decedent's daughter, with exhibits; (7) the deposition of Mary Caviness, the decedent's girlfriend; (8) the deposition of Lieutenant Joel Givens; (9) a document entitled "incident recall"; and (10) a document entitled "All PMDC State Responses." Plaintiff filed a response to the motion, asserting reasonable inferences could be drawn from the evidence establishing each element of her causes of action. She attached to her response the following: (1) portions of police reports about the incident and (2) the decedent's autopsy report. The City filed a reply, explaining its position plaintiff failed to show a triable issue of material fact.

¶ 9        On February 17, 2022, the circuit court entered its written order denying the City's motion for summary judgment. In considering willful and wanton conduct, the court found Luyando's statements and Officer Cox's transmission could be consistent with Officer Cox holding onto the truck as it accelerated away. It then concluded plaintiff had "presented just enough evidence on this issue to survive summary judgment." On the issue of proximate cause, the court found it was a reasonable conclusion Officer Cox discharged his service revolver before the truck hit the tree. It also found it was a reasonable inference the two shots fired were not accidental. The court further explained, if a jury found "Officer Cox acted willfully and wantonly in grabbing ahold of the vehicle as it sped away," then it would not matter whether the decedent died of intentional gunshot wounds, accidental gunshot wounds, the impact with the tree, or a combination thereof. The court concluded plaintiff had set forth sufficient evidence on the issue of proximate cause to survive summary judgment.

¶ 10        The City filed a timely motion to reconsider asserting the circuit court must apply the Immunity Act's definition of willful and wanton conduct and a police officer's pursuit of a fleeing suspect in contravention of his or her training does not *per se* establish willful and wanton conduct. Plaintiff filed a response in opposition to the City's motion to reconsider contending the

court did apply the definition from the Immunity Act and did not apply a *per se* rule in determining willful and wanton conduct.

¶ 11    On December 20, 2022, the circuit court entered a written order allowing the City's motion to reconsider and granting summary judgment in its favor. The court stood by its finding enough evidence existed in the record from which a jury could find Officer Cox held onto the truck as it accelerated away. However, the court agreed with the City it had failed to take the next step and determine whether any evidence existed from which a jury could find Officer Cox did so with an intention to harm the decedent or with an utter indifference to or conscious disregard for the decedent's safety. The court found no evidence in the record to support a finding Officer Cox held onto the truck with an utter indifference to or conscious disregard for the decedent's safety, even viewing the evidence in a light most favorable to plaintiff. It noted Luyando's testimony gave no insight into why Officer Cox may have held onto the truck. Likewise, the court found Officer Cox's transmission gave no insight into why he was holding on. Additionally, the court agreed with the City that acting in contravention of one's training was not *per se* willful and wanton conduct.

¶ 12    On December 22, 2022, plaintiff filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 13                                II. ANALYSIS

¶ 14                             A. Summary Judgment

¶ 15    As noted, the circuit court granted summary judgment in favor of the City. "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine question of material fact exists." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162, 862

N.E.2d 985, 991 (2007). A court should only grant summary judgment if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). Our supreme court has described the analysis as follows:

> "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Bagent*, 224 Ill. 2d at 162-63.

We review the grant of summary judgment *de novo*. *Chicago Sun-Times v. Cook County Health & Hospitals System*, 2022 IL 127519, ¶ 24.

¶ 16                                    B. Willful and Wanton Conduct

¶ 17            Under the Immunity Act, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2016). In turn, "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2016). Section 1-210 of the Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm *or* which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (Emphasis added.) 745 ILCS 10/1-210 (West 2016). The section clearly sets forth both intentional and unintentional willful and wanton conduct. See 745 ILCS 10/1-210

(West 2016). Section 1-210 applies exclusively to evaluate whether a public entity/employee has committed willful and wanton conduct under the Immunity Act. *Bielema v. River Bend Community School District No. 2*, 2013 IL App (3d) 120808, ¶ 17, 990 N.E.2d 1287. With unintentional willful and wanton conduct, "[u]tter indifference to, or conscious disregard for, the safety of others consists of more than mere inadvertence, incompetence, or unskillfulness." *In re Estate of Stewart*, 2016 IL App (2d) 151117, ¶ 75, 60 N.E.3d 896.

¶ 18        Whether a public employee's actions constitute willful and wanton conduct depends on the facts of the particular case. *Bielema*, 2013 IL App (3d) 120808, ¶ 12. Generally, whether specific acts constitute willful and wanton conduct is a question of fact. *Bielema*, 2013 IL App (3d) 120808, ¶ 12. "However, the court may determine as a matter of law whether conduct is willful and wanton 'if the evidence so overwhelmingly favors one party that a contrary determination cannot stand.' " *Bielema*, 2013 IL App (3d) 120808, ¶ 12 (quoting *Brown v. Chicago Park District*, 220 Ill. App. 3d 940, 943, 581 N.E.2d 355, 358 (1991)).

¶ 19                            C. Officer Cox's Conduct

¶ 20        Plaintiff contends a jury could conclude Officer Cox grabbing onto the decedent's vehicle and/or shooting the decedent was willful and wanton conduct. The City asserts plaintiff does not point to any evidence demonstrating Officer Cox grabbed the decedent's truck door and/or shot the decedent with a conscious disregard or utter indifference for the safety of others. With both Officer Cox and the decedent perishing from the incident and with no cameras capturing the incident, the evidence is scant.

¶ 21        The known facts follow. Shortly after 1 a.m., Officer Cox observed the truck driven by the decedent and checked its license plate number in the database, which revealed the truck's registration had expired. Officer Cox stopped the truck. He first searched the database for the name

Carl Thurman, which yielded no records. He then searched the database for the decedent's name, which showed the decedent's driver's license was revoked. Officer Cox received those results at around 1:10 a.m. At 1:11 a.m., he requested another unit.

¶ 22    Luyando observed Officer Cox walk towards the truck. He believed he saw a light and assumed Officer Cox had a flashlight. Police officers recovered a flashlight and handcuffs on the street north of Officer Cox's squad car. Luyando next noticed the driver's door to the truck was open, and Officer Cox was standing close to the truck between the door and the driver. Luyando described the encounter between the decedent and Officer Cox as a normal traffic stop. He did not observe anything unusual until the truck suddenly leaped forward. Luyando also described the truck as being "floored" and "taking off at a high acceleration."

¶ 23    During his deposition, the attorneys strenuously and repeatedly questioned Luyando about what Officer Cox did when the truck accelerated forward. Luyando stated Officer Cox went with the vehicle. He also indicated Officer Cox's body flung forward with the truck. Luyando described Officer Cox's movement as "if somebody was behind him and pushed him at full force." The truck's and Officer Cox's movements were simultaneous. Luyando believed Officer Cox was somehow attached to the truck, but he did not see how the officer was attached. Luyando admitted Officer Cox could have been holding onto the truck or he could have been caught on something. He also stated it looked like Officer Cox was in "trouble or danger" and may have been "tangled up" with the truck. Luyando did not see Officer Cox running with the truck. Additionally, once the truck accelerated, Officer Cox and the truck were out of Luyando's view. While watching the incident, Luyando did not hear gunshots.

¶ 24    Other Rockford police officers reported hearing Officer Cox state over the radio, "he's running" or "he's running and I'm on the." Officer Cox did not reply to any messages after

that statement.

¶ 25 Police officers found the decedent's truck near a church. According to one police officer's description, the truck had struck a tree and had rotated 180 degrees around the tree. The decedent was dead inside the truck. Officer Cox was found unconscious and lying face down in the church's parking lot 20 feet from the decedent's truck. Officer Cox's gun was not near him when he was found. Officer Cox died later. The autopsy of the decedent revealed he had suffered a gunshot wound to the left chest and upper back.

¶ 26 Lieutenant Givens testified police officers are trained not to climb onto a vehicle that is fleeing. They are trained to create space between themselves and the vehicle, let the vehicle drive off, inform control the motorist fled, and seek a warrant for the motorist's arrest. The only time it would be reasonable for an officer to climb on a vehicle as it drove away was if the officer felt his or her life was in imminent danger.

¶ 27 D. Existence of a Triable Issue

¶ 28 "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." (Internal quotation marks omitted.) *Mazin v. Chicago White Sox, Ltd.*, 358 Ill. App. 3d 856, 862, 832 N.E.2d 827, 833 (2005). As noted, the undisputed facts are scant. Thus, we are examining whether reasonable persons can draw different inferences from the undisputed facts. Additionally, we note the circuit court concluded the record contained evidence from which a jury could infer Officer Cox grabbed onto the decedent's truck as it fled. For purposes of this appeal, the City does not dispute that such an inference is reasonable based on the evidence.

¶ 29 Generally, the state of mind for willful and wanton conduct must be proved by

circumstantial evidence. See *Rowlett v. Hamann*, 112 Ill. App. 2d 121, 125, 251 N.E.2d 358, 360 (1969). More than one conclusion may follow from the evidence. *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 35, 63 N.E.3d 194. However, "a fact cannot be established through circumstantial evidence unless the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn." *Berke*, 2016 IL App (1st) 150397, ¶ 35. Moreover, when the established facts demonstrate the nonexistence of the fact to be inferred appears to be just as probable as its existence, then the conclusion is a matter of speculation, conjecture, and guess, and the inference is not permissible. *Berke*, 2016 IL App (1st) 150397, ¶ 35.

¶ 30 In her brief, plaintiff simply notes different conclusions can be drawn from the evidence regarding both Officer Cox staying with the truck and shooting the decedent. The only known fact or reasonable inference from the known facts plaintiff identifies as supporting her aforementioned assertion is Officer Cox's transmission in which he states, " 'He's running.' " Based on that transmission, plaintiff contends Officer Cox intentionally or "recklessly" moved with the truck by holding on, which ultimately culminated in Officer Cox climbing into the cab of the truck and shooting the decedent twice and disabling him from safely operating the truck before the truck hit a tree.

¶ 31 As pointed out by the circuit court, Officer Cox's transmission about the decedent running provides only speculative evidence as to why Officer Cox was holding onto the vehicle. The statement is consistent with him holding onto the truck out of fear for his safety or unskillfulness, as well as Officer Cox attempting to stop the decedent from fleeing. The statement does not make it more probable he was attempting to stop the decedent. Likewise, none of Luyando's testimony makes it more probable Officer Cox held onto the truck in an attempt to stop the decedent rather than doing so based on negligence or fear. Additionally, Luyando described

Officer Cox as moving simultaneously with the quickly accelerating truck, and plaintiff does not explain how Officer Cox had any time to decide to be utterly indifferent to or make a conscious decision to disregard the decedent's safety by holding onto the truck. As such, given the known circumstantial facts, it is pure speculation Officer Cox was attempting to stop the decedent from fleeing by holding onto the decedent's truck.

¶ 32    Regarding the shooting of the decedent, plaintiff fails to identify any facts allowing an inference Officer Cox climbed in the truck. Luyando did not see Officer Cox in the truck, and the other police officers found Officer Cox 20 feet from the truck. Here, it is just as likely Officer Cox shot the decedent in an attempt to save himself as it is he shot the decedent to stop him from fleeing. Even assuming Officer Cox intentionally shot the decedent, it is pure speculation as to why he did so.

¶ 33    This case is distinguishable from the cases cited by plaintiff. In *Robles v. City of Chicago*, 2014 IL App (1st) 131599, ¶¶ 16, 18, 10 N.E.3d 236, the reviewing court agreed with the circuit court's denial of summary judgment on the grounds the evidence could support a finding of willful and wanton conduct. The reviewing court noted potential conflicts between the police officers' testimony and the physical evidence left unresolved issues that could support a finding of willful and wanton misconduct. *Robles*, 2014 IL App (1st) 131599, ¶ 18. As such, it did not want to deny plaintiff the opportunity to have experts review the physical evidence and to compare it with the officers' testimony and statements. *Robles*, 2014 IL App (1st) 131599, ¶ 18. Here, plaintiff has not identified any potential expert testimony. Moreover, as previously explained, this appeal does not involve conflicts between the parties' evidence. It involves whether certain inferences are permissible from the undisputed facts and, if so, whether those permissible inferences are in conflict.

¶ 34        In *Suwanski v. Village of Lombard*, 342 Ill. App. 3d 248, 257, 794 N.E.2d 1016, 1023 (2003), the reviewing court held, under the specific facts of the case, the plaintiff presented a jury question sufficient to preclude summary judgment on the issue of whether the police officer had engaged in willful and wanton conduct. In reaching that conclusion, the reviewing court noted undisputed facts supporting a finding of no willful and wanton conduct and then listed numerous "undisputed facts that clearly support[ed] a finding of willful and wanton conduct." *Suwanski*, 342 Ill. App. 3d at 257. Again, this appeal involves only a few undisputed facts, which are not in conflict.

¶ 35        A case with facts more similar to the one before us is *Berke*. In *Berke*, 2016 IL App (1st) 150397, ¶ 41, the reviewing court concluded the plaintiffs, Raymond and Carol Berke, failed to make a *prima facie* case of negligence and summary judgment was proper where there was no direct or circumstantial evidence of the proximate cause of Raymond's fall in a doorway. The plaintiffs had alleged Raymond's injury occurred when he tripped over the threshold at an exit because the threshold was unreasonably high and violated numerous building codes and industry standards. *Berke*, 2016 IL App (1st) 150397, ¶ 36. They also asserted the door closed too fast. *Berke*, 2016 IL App (1st) 150397, ¶ 36. Raymond had no recollection of his fall, and no one saw or heard what made him fall. *Berke*, 2016 IL App (1st) 150397, ¶ 37. The reviewing court noted, even though a trier of fact could infer Raymond, who was walking at a rapid pace, tripped over the threshold or was propelled forward by the door, it was equally likely a jury could conclude he fell for reasons unrelated to the condition of the premises. *Berke*, 2016 IL App (1st) 150397, ¶ 37. It explained the plaintiffs' assertion the threshold and door created a dangerous condition was insufficient to establish a causal connection between the defendants' alleged negligence and the man's injuries. *Berke*, 2016 IL App (1st) 150397, ¶ 41. As such, the conclusion advocated by the

plaintiffs "embraces speculation, surmise, and conjecture." *Berke*, 2016 IL App (1st) 150397, ¶ 41. A trier of fact cannot make such an inference. *Berke*, 2016 IL App (1st) 150397, ¶ 41. The conclusion the height of the threshold caused Raymond to fall "formulates merely a possible conclusion, not a probable conclusion." *Berke*, 2016 IL App (1st) 150397, ¶ 41. This is not a case where the plaintiff and the defendant both presented evidence of proximate cause and a jury should be called on to resolve the conflict. *Berke*, 2016 IL App (1st) 150397, ¶ 41.

¶ 36        With the limited circumstantial evidence in this case, whether Officer Cox acted with willful or wanton conduct during the incident is pure speculation. As in *Berke*, the conclusions asserted by plaintiff are just possibilities and not probabilities. This is not a case where both parties presented material facts on willful and wanton conduct and the trier of fact has a conflict to resolve. Accordingly, we find the circuit court properly granted summary judgment in favor of the City.

¶ 37                                III. CONCLUSION

¶ 38        For the reasons stated, we affirm the Winnebago County circuit court's judgment.

¶ 39        Affirmed.

***Banks v. City of Rockford*, 2023 IL App (4th) 221111**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 17-L-347; the Hon. Lisa R. Fabiano, Judge, presiding. |
| **Attorneys for Appellant:** | Craig M. Sandberg, of Sandberg Law Office, P.C., of Deerfield, for appellant. |
| **Attorneys for Appellee:** | Michael J. Atkus and Matthew S. Clark, of Knight Hoppe Kurnik & Knight, Ltd., of Rosemont, for appellee. |